Appellant Montgomery Bridge and Engineering, Inc., is a pre-qualified contractor which sometimes bids on State highway construction jobs. On February 25, 1983, Montgomery Bridge submitted its bid on Federal Aid Project No. F-188 (25) (herein the project) which included the construction of two 0.108-mile bridges in Marengo County, Alabama. The notice to contractors announcing the intent to receive bids on the project stated that "the bracket estimate on this project is from $1,000,000.00 to $1,500,000.00." The bracket estimate is the range within which appellee, the State Highway Department (herein the department) would ordinarily expect the bids to fall.
Montgomery Bridge's bid on the project was submitted on standard forms prepared by the department. The form provided an item-by-item breakdown with the bid for each item written in words in one place and in numerals in another place and a grand total expressed on the last page.
Items 510C-010 and 510C-011 called for itemized bids on reinforced concrete parallel bridge superstructures for the left and right lanes of a highway. The description of the two bridges was otherwise identical in materials and construction.
On the left-lane item, Montgomery Bridge wrote in figures under the "Amount Bid" column "80,600.00" and under the "Item With Unit Price Written in Words" *Page 1115 
column wrote "Eighty thousand six hundred [Dollars] no [Cents Per Lump Sum]." The bid expressed in words coincided exactly with the bid expressed in figures.
On the right-lane item Montgomery Bridge wrote "80,600.00" in the "Amount Bid" column, but wrote in "eight thousand six hundred" in the other column. (Emphasis added.) The grand total of the bid was shown as $1,305,091.00, which is the total that one would reach using the amount of "Eighty thousand six hundred dollars" as the bid on the right-lane bridge.
The department determined the bid on the right-lane bridge to be $8,600.00 rather than $80,600.00, which was a difference of $72,000. Montgomery Bridge was the low bidder at either price. Upon learning that the department intended to award it the contract at the price reduced by $72,000.00 or require the forfeiture of its bid bond if the contract was not accepted at the lower figure, Montgomery Bridge filed suit in the Circuit Court of Montgomery County seeking a writ of mandamus and in the alternative for declaratory judgment seeking preliminary and permanent injunction.
After the trial court denied relief, Montgomery Bridge accepted the contract at the lower price in order to continue to keep its employees working and appealed to this court seeking relief.
Though several questions and arguments are advanced by both parties, the dispositive issue is whether § 39-2-7, Code of Alabama 1975 is to be construed strictly in the event of a discrepancy between the amount expressed in words and that expressed in figures in a bid for a public contract.
We begin our analysis with § 39-2-7, Code of Alabama 1975, which deals with the effects of errors and discrepancies in bids. It reads, "In case of error in the extension of prices in bids, the unit price will govern. In case of a discrepancy between prices shown in the figures and in words, the words will govern."
The department argues it was only following the law as stated when it changed the amount of the bid upon discovering the error after the bids were opened. The department in its brief emphasizes that an obvious purpose of the statute is to remove ambiguity and contradictions in bids by using a strictly neutral statutory interpretation rule and thereby avoiding any subjective inquiries into a bidder's intent. The department stresses the necessity of strictly interpreting the statute in order to protect reputable contractors and the public from unjustified manipulation of bids and also to protect public officials and employees from charges of collusion and corruption by relieving them of the responsibility of determining the intent of the bidder. Moreover, though the department does not charge any wrongdoing in this particular case, they caution that because of the various items of a bid and the numerous ways in which a bid can be manipulated to appear as simple error, true intent is difficult to ascertain when errors, contradictions or ambiguities are presented.
Montgomery Bridge urges that an inflexible mechanical reading of the statute produces unfair and punitive results. Essentially Montgomery Bridge argues the great inequity and absurdity in the department's using a strict reading of the statute to hold them to the error in the bid, when the nature of the error is so obviously typographical and the department recognizes it as such.
In the resolution of this case we must hold so as to ascertain and effectuate the legislative intent. The purpose of interpretation is not to improve a statute but rather to explain the express language used in the statute. Lewis v.Hitt, 370 So.2d 1369 (Ala. 1979). When the language of a statute is clear and unambiguous, there is no room for judicial construction. Employees Retirement System of Alabama v. Head,369 So.2d 1227 (Ala. 1979).
The language of § 39-2-7 is clear in its intent and purpose which is to serve as a rule of construction in the event of a discrepancy between amounts expressed in figures and in words in a bid for a public contract. There is nothing inherently *Page 1116 
correct in designating that words will control figures in case of discrepancy, but rather it is a matter of legislative discretion and judgment.
The purpose of the statute is clear. Without the application of § 39-2-7, there is no way to determine absolutely what the intent is in a given situation. The statute seeks to avoid a potential quagmire likely to result from making subjective inquiries into a bidder's intent. To require the department to delve into subjective conjecture external of the instrument would not only cause undue delay and chaos in the department's processing of bids, but would also open the door to favoritism, fraud and corruption in the letting of public bids.
While this court recognizes the seeming inequity that can result from a strict adherence to § 39-2-7, to do otherwise would be more harmful, in the long run, to the department, bidders and the taxpaying public. To make an exception in this case would be to set a harmful precedent to chip away and erode the statute in future cases involving seemingly innocent mistakes in bids.
Though Montgomery Bridge found itself caught between the proverbial rock and hard place of either forfeiting its bid bond or accepting the contract at the lower price, "[A]ll men are charged as a matter of public policy with a knowledge of the law pertaining to their transactions." Barber Pure Milk Co.v. Alabama State Milk Control Board, 275 Ala. 489, 494,156 So.2d 351, 355 (1963), quoting Birmingham Bar Association v.Phillips Marsh, 239 Ala. 650, 656, 196 So. 725, 731 (1940). Furthermore, "every contract is made with reference to existing law and every law affecting the contract is read into and becomes a part of the contract when made. . . ." Bush v. Greer,235 Ala. 56, 58, 177 So. 341 (1937).
Public contract bidders have long been aware of the need for meticulous care in the preparation of bids, for § 39-2-7 was enacted by the legislature in 1947 (1965 Ala. Acts 492 at 340). Though the statute may seem harsh and inflexible, when applied to the facts of this case, the severity of its application is lessened by the fact that participants in the public bidding process are familiar with the statute and the attendant consequences of its application.
Though we may sympathize with a bidder making an innocent mistake in his bid, the long term protection of the department, bidders and public compels our affirmation of the trial court's strict adherence to the statute.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.